UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALVIN J. PORTE                                CIVIL ACTION

VERSUS                                        NUMBER: 17-5657

ILLINOIS CENTRAL RAILROAD COMPANY             SECTION: "B"(5)

# ORDER & REASONS

**IT IS ORDERED** that Defendant's motions to exclude expert testimony of Dr. Saux (Rec. Doc. 15) and to strike Dr. Saux (Roc. Doc. 16) are **DENIED**. In addition to considering the foregoing motions, consideration was also given to Plaintiff's opposition memorandum (Rec. Doc. 29), Defendant's reply (Rec. Doc. 33), the entire record and applicable law.

Defendant's basic objections relate to alleged failures by this practicing, board certified medical oncologist and hematologist to rule out other plausible causes for development of his patient's renal cell carcinoma.[1] Plaintiff contends that Dr.

---

[1] "Carbon tetrachloride, a somewhat volatile compound five times heavier than air, is toxic to humans if presented in atmosphere in concentrations of more than 100 parts to 1,000,000. It therefore is essential when working with this chemical to provide adequate ventilation, a task that is complicated because the density of the compound may result in a high concentration of the fumes in the lower portions of an enclosed area." *United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 616, 79 S. Ct. 517, 518, 3 L.Ed. 2d 541 (1959). Exposure to this chemical has reportedly caused

Saux's medical opinion on causation was based on a proper differential diagnosis and thereby reliable under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1983) and its progeny.

Apart from determining the qualifications of the expert, the Court must act as a "gate-keeper" to ensure that the proffered expert testimony is both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. (quoting *Daubert*, 509 U.S. at 592-93, 113 S. Ct. 2786,. With respect to reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595, 113 S. Ct. 2786.

When the admissibility of expert testimony is challenged under *Daubert*, the proponent of the evidence bears the burden of proving that the testimony that the testimony is reliable and relevant. *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*). To meet this burden, a party cannot simply rely

---

workers to die. *Fitzgerald v. Compania Naviera La Molinera*, 394 F. Supp. 402 (E.D. La. 1974).

on its expert's assurances that he has utilized generally accepted scientific methodology. *Id.* Rather, some objective, independent validation of the expert's methodology is required. *Id.* In this regard, however, it is not necessary for the proponent of the evidence to prove that "the testimony is factually correct." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383 (5th Cir. 2009).

Ultimately, a court's role as a gatekeeper does not replace the adversary system. *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Proper deference is to be accorded to the jury's role "as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* (*quoting Viterbo*, 826 F. 2d at 422).

A review of the record, including the list of nineteen references relied upon by Dr. Saux and his deposition, indicates that some of the reference materials and studies appear to have temporal and other issues noted by defense counsel during the

doctor's deposition, and may conflict with others relied upon my the Defendant's expert, in time and context, our Gatekeeper duties do not include weighing the evidence to choose which side's evidence is more credible than others. *Id*. (Rec. Doc. 29-2; 29-4). Material factual disputes exist on whether Plaintiff suffered an on the job injury and the causation of same.

Generally speaking, to carry the burden of proving a plaintiff's injury was caused by exposure to a specified substance, it is preferable that plaintiff demonstrates "the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure." *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (quoting *Wright v. Millamette Indus., Inc.*, 91 F.3d 1105, 1106 (8th Cir. 1996)); *see Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) (concluding that "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case"); *cf. Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) (explaining that "[t]he underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process to occur"). But it must also

be recognized that only rarely are humans exposed to chemicals in a manner that permits quantitative determination of adverse outcomes. Human exposure occurs most frequently in occupational settings where workers are exposed to industrial chemicals like lead or asbestos; however, even under these circumstances, it is usually difficult, if not impossible, to quantify the amount of exposure. Federal Judicial Center, Reference Manual on Scientific Evidence 187 (1994).

Consequently, while precise information concerning the exposure necessary to cause specific harm to humans and exact details pertaining to the plaintiff's exposure are beneficial, such evidence is not always available, or necessary, to demonstrate that a substance is toxic to humans given substantial exposure, and need not invariably provide the basis for an expert's opinion on causation. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 157 (3rd Cir. 1999) (noting "that even absent hard evidence of the level of exposure to the chemical in question, a medical expert could offer an opinion that the chemical caused plaintiff's illness").

Although Dr. Saux did not point to a qualified level of exposure, there was evidence of substantial exposure. Plaintiff testifies he was daily and directly exposed to this toxic chemical throughout his workday. According to the record, he daily used it as a solvent in cleaning operations for Defendant. He and a co-

worker further stated the substance got on Plaintiff's skin, clothes and cleaning equipment during daily direct usages while in Defendant's employ. Plaintiff described dipping a rag into a large can or vat labelled carbon tetrachloride, without gloves or mask, in an unventilated work area. This evidence concerning the level of this substance is adequate to permit a rational factfinder to conclude that plaintiff was exposed to high concentrations of carbon tetrachloride solvent. And, as seen earlier, exposure to high concentrations of it could cause toxic reactions, including death. Thus, this clearly is not a case in which the plaintiff is unable to establish any substantial exposure to this toxic product. *Cf. Wintz v. Northrop Corp.*, 110 F.3d 508, 512-14 (7th Cir. 1997) (holding that expert opinion was not reliable when expert formed opinion that in utero exposure to bromide caused birth defects, but expert had no information concerning the mother's work environment or her exposure to bromide); *Allen v. Pennsylvania Engineering Corp., et al*, 102 F.3d 194, 199 (5th Cir. 1996) (concluding that expert opinion that plaintiff's brain cancer was caused by exposure to ethylene oxide in his hospital workplace was not sufficiently reliable to support admissibility when "experts' background information concerning [plaintiff's] exposure to [chemical was] so sadly lacking as to be mere quesswork").

Defendant argues that Dr. Saux's differential diagnosis was unreliable because he failed to "rule out" all potential causes of his cancer other than carbon tetrachloride. A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 758-61 (3rd Cir. 1994). However, "[a] medical expert's causation conclusion should not be excluded because he or she has failed to rule out every possible alternative cause of a plaintiff's illness." *Heller*, 167 F.3d at 156. The alternative causes suggested by a defendant affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony, *id*. at 157, unless the expert can offer no explanation for why he or she has concluded [an alternative cause offered by the opposing party] was not the sole cause, *id*. at 156. *See also Kannankeril v. Terminix Int'l*, 128 F.3d 802, 808 (3rd Cir. 1997) (explaining that "[i]n attacking the differential diagnosis performed by the plaintiff's expert, the defendant may point to a plausible cause of the plaintiff's illness other than the defendant's actions" and "[i]t then becomes necessary for the plaintiff's experts to offer a good explanation as to why his or her conclusion remains reliable"); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (recognizing that perceived faults in doctor's

7

differential diagnosis are matters for cross-examination that do not affect admissibility); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 764-65 (3rd Cir. 1994) (recognizing that failure to account for all possible causes does not render expert opinion based on differential diagnosis inadmissible; only if expert utterly fails to consider alternative causes or fails to explain why the opinion remains sound in light of alternative causes suggested by the opposing party is expert's opinion unreliable for failure to account for all potential causes). Dr. Saux's alleged failure to account for all possible alternatives causes for plaintiff's renal problems does not prohibit the admissibility of his opinion.

To prevail in a toxic tort case, a plaintiff must show both general causation and specific causation. *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). An opinion on general causation is inadmissible if it rests entirely on studies that do not show statistically significant results. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 145, 118 S. Ct. 512, 139 L.Ed. 2d 508 (1997); *Wells*, 601 F.3d at 380 (noting that the court has frowned on causative conclusions beret of statistically significant epidemiological support"); *Allen*, 102 F.3d at 197 (rejecting as unreliable studies that were not statistically significant and were merely "suggestive" of a link).

That Dr. Saux may have used regulatory and medical references that have weaknesses in rendering his opinion can appropriately be raised through cross-examination and the testimony of Defendant's counter-expert. See *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786. There must be some scientific validation of the theory advanced by the expert. See *id*. In view of "the 'liberal thrust' of the Federal Rules [of Evidence] and their 'general approach of relaxing the traditional barriers to opinion testimony,'" *id*. at 588, 113 S. Ct. 2786 (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169, 109 S. Ct. 439, 102 L.Ed.2d 445 (1988)), the Court finds that the presence of studies that cut against the expert is a subject for cross-examination, not a barrier to admissibility. See *id*. at 596, 113 S.Ct. 2786. To the extent that Dr. Saux or other experts may not take into account every study that is relevant to the question of general causation or otherwise exhibited bias in rendering their opinions, those issues go to the weight of their opinions, and not the questions of admissibility. *See 14.38 Acres of Land*, 80 F.3d at 1077.

"The fact that exposure to [a substance] may be a risk factor for [a disease] does not make it an actual cause simply because [the disease] developed." *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1255 (11th Cir. 2010) (quoting *Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 846 (W.D. Tx. 2005)). Thus, "if an

9

expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony."  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001).  A medical expert need not, however, "rule out every possible alternative cause of a plaintiff's illness." *Id.*

A standard way by which medical experts address the questions of specific causation is by performing a differential diagnosis or a differential etiology.  *See, e.g., In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 758 (3d Cir. 1994) (noting that differential diagnosis is a "technique that has widespread acceptance in the medical community . . . that involves assessing causation with respect to a particular individual").  "In performing a differential diagnosis, a physician begins by 'ruling in' all scientifically plausible causes of the plaintiff's injury.  The physician then 'rules out' the least plausible causes of injury until the most likely cause remains." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001); *see also Hendrix ex rel. R.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1195 (11th Cir. 2010); *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 178 (6th Cir. 2009.

When the etiology of a disease is often unknown, differential diagnosis may be of less utility. *See, e.g., Bland v. Verizon Wireless, (VAW) LLC*, 538 F.3d 893, 897 (8th Cir. 2008) (questioning the reliability of a causation opinion bases on differential diagnosis "[w]here the cause of the condition is unknown in the majority of cases"); *Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 21 n. 41 (D. Mass. 1995) (noting that it was doubtful that a differential diagnosis could pinpoint the cause of the decedent's acute lymphocytic leukemia, given that "90 percent of ALL cases are of unknown cause". In such circumstances, the physician rendering an opinion on specific causation should, at the least, articulate the reasons why, unlike the majority of cases, the instant case is one in which the cause of the disease can be ascertained to a reasonable degree of medical certainty.

Dr. Saux is well-qualified to render an opinion on general and specific causation. His reliance on regulatory and medical references and his patient's statements about daily exposure to the solvent at issue support the notion that there is a significant association between carbon tetrachloride solvent and plaintiff's condition.[2] The fact that any expert's opinions may be flawed,

---

[2] To the extent the following case may have relevance to litigants here, we recommend its reading. The Supreme Court, in an opinion authored by Justice Ginsburg, held that: (1) mental anguish damages resulting from the fear of developing cancer may be recovered under the FELA by a railroad worker suffering from the actionable injury asbestosis caused by work-related

11

that there are studies that cut against his or her opinion, and that one could not articulate a biologically plausible mechanism for carbon tetrachloride to cause renal cell carcinoma all go to the weight of the expert's opinion, and not the question of admissibility. Finally, as to specific causation, the deposition testimony and report of Dr. Saux sufficiently reveal that he adequately considered the possibility of alternative causes. Accordingly, the motions to exclude are **DENIED**.[3]

New Orleans, Louisiana, this 12th day of September, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

exposure to asbestos; (2) although a plaintiff who has asbestos but not cancer can recover damages for fear of cancer under FELA without proof of physical manifestations of the claimed emotional distress, it is incumbent upon such a plaintiff to prove that his alleged fear is genuine and serious; and (3) FELA allows a worker to recover his entire damages from a railroad whose negligence jointly caused an injury, thus placing on the railroad the burden of seeking contribution from other tortfeasors. *Norfork & W. Ry. Co. v. Ayers*, 538 U.S. 135, 123 S. Ct. 1210, 155 L. Ed. 2d 261 (2003).

[3] Defendant's request to strike this expert witness based on the failure to provide all relied-upon reference materials at the June 26, 2018 deposition is disingenuous. The witness offered to obtain those materials but that offered was apparently rejected. Further, prejudice has not been shown because defendant was able to question the witness about key references in a sufficient manner that negates conclusory or assumed prejudice. However, if after conferring with their expert about Mr. Saux's other references, and if their expert specifies certain questions about those references, Defendant may confer with Plaintiff about proposing those questions to Dr. Saux in a deposition via written interrogatories.